# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW HAMPSHIRE

JULIA O. FAIGEL DMD, P.C.,

        Plaintiff,

    v.                               DEMAND FOR JURY TRIAL

IADMD HOLDINGS, LLC,           Civil Action No.: 1:18-cv-00797

        Defendant.

## COMPLAINT

1.     This is an action for declaratory judgment of non-infringement and to order the cancellation of trademark registrations held by IADMD Holdings, LLC: Registration Nos. 4,962,993 for the mark DOCTOR DENTAL ("the '993 Registration"), 4,886,106 for the mark DR DENTAL ("the '106 Registration"), 4,250,602 for the mark DR DENTAL ("the '602 Registration"), and 3,300,322 for the mark DOCTOR DENTAL MD ("the '322 Registration") (collectively "the IADMD Registrations").

2.     This case concerns the ongoing harm and damage to Plaintiff Julia O. Faigel DMD, P.C. ("Faigel" or Plaintiff") stemming from baseless threats and demands made by Defendant IADMD Holdings, LLC ("IADMD" or "Defendant"), purporting to be supported by Defendant's registered trademarks—all of which are subject to cancellation.

3.     Since at least 2010, Plaintiff, along with its associated companies, has operated dentistry practices throughout the northeastern United States under the mark DR. DENTAL. Faigel currently operates over forty dentistry offices in Connecticut, Massachusetts, New Hampshire, and New Jersey, all under the mark DR. DENTAL.

**COMPLAINT**                                            *Page 1 of 22*

4.      Faigel has been subjected to numerous threats and demands from IADMD, asserting rights against Faigel based on IADMD's ownership of these registrations, which threats and demands Faigel believes are baseless in light of the fact that IADMD's purported rights cannot be supported, as explained below.  IADMD's threats and demands have threatened to inhibit Faigel's ability to compete fairly in the dental services market and have caused additional harm to Faigel.  As such, Faigel seeks a declaration from this Court that its use of the mark DR. DENTAL is non-infringing.

5.      IADMD is the current owner of record of the IADMD Registrations, which IADMD has asserted as the basis for its threats to sue Faigel based on Faigel's use of the DR. DENTAL Mark.

6.      IADMD has no actual rights in the DR. DENTAL Mark, however, and IADMD's registrations are subject to cancellation because the prosecution and maintenance histories of those registrations reveal on their faces that (a) the marks in question many not have actually been in use at the time the applications were filed, and/or (b) the marks were actually owned and/or used by someone other than the named Applicant.

7.      Alternatively, even apart from the issued raised by the prosecution histories, each of these registrations is also subject to cancellation because the marks (a) are merely descriptive of the services claimed and lack secondary meaning; and/or (b) have been abandoned by the putative owner IADMD.

## **PARTIES**

8.      Faigel is a professional corporation duly organized and existing under the laws of the Commonwealth of Massachusetts with its principal offices at 55 Meridian Street, East Boston, Massachusetts 02128.

---

**COMPLAINT**                                                                    *Page 2 of 22*

9.      Upon information and belief, IADMD is a limited liability company duly organized and existing under the laws of the State of New Hampshire, with its principal offices at 215 South Broadway, Salem, New Hampshire 03079.  Upon information and belief, IADMD's registered agent is Rosemary DiMaria, 39 Webber Road, East Hampstead, New Hampshire 03826.

## JURISDICTION AND VENUE

10.     This is an action for declaratory judgment arising under (i) the Trademark Laws of the United States, 15 U.S.C. § 1051 *et seq*. (the "Trademark Act") and (ii) 28 U.S.C. §§ 2201 and 2202 (the Declaratory Judgment Act).  Thus, this Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

11.     Upon information and belief, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because this is the judicial district where (i) Defendant resides and/or has its principal place of business, and (ii) where Defendant is subject to personal jurisdiction.  Upon information and belief, Defendant maintains offices in the State of New Hampshire, and advertises and sells its goods in the State of New Hampshire.

## FACTUAL BACKGROUND

### A.  FAIGEL'S USE OF DR. DENTAL

12.     Julia Faigel is the owner and clinical director of "Dr. Dental", a regional chain of dental clinics serving clients in New Jersey, New Hampshire, Massachusetts, and Connecticut.

13.     Since its inception in 2004, Faigel's clinics have built a reputation for flexible scheduling and reasonable prices.  Faigel offers a full range of dental services, from routine cleaning and oral hygiene to crowns and non-surgical gum treatments.

14.     In 2010, Faigel began using the DR. DENTAL Mark in association with these

clinics.

15.     Faigel created Dr. Dental with the goal of opening trusted neighborhood family dental offices in locations chosen to provide the most convenience for its customers.

16.     Today, there are twenty-one (21) Dr. Dental offices in Massachusetts, sixteen (16) in Connecticut, three (3) in New Hampshire, and three (3) in New Jersey.

**B. THE IADMD REGISTRATIONS**

17.     On information and belief, Rosemary DiMaria ("DiMaria") is a founder and principal owner of IADMD.

18.     On or about April 20, 2005, DiMaria, in her own name, filed an application with the United States Patent and Trademark Office ("USPTO") (Serial Number 78/612,948) for the standard character mark DOCTOR DENTAL MD, based on an intent to use the mark in connection with "Providing information about dentistry, dental health, oral hygiene, oral disease, dental cures, dental medicine, dental diagnosis, dental treatment, dental counseling, dental advice and vendors, and patients via the internet," in Class 44.  The application was initially refused based on a finding that the mark was merely descriptive of the services identified.  The mark was ultimately registered on the Supplemental Register on September 25, 2007 (Reg. No. 3,300,322) (the "'322 Registration").  This '322 Registration was later assigned by DiMaria to IADMD in a *nunc-pro-tunc* assignment dated July 17, 2015 and recorded on July 21, 2015 (Reel 5880, Frame 0986).  The '322 Registration was renewed last year in a filing dated September 22, 2017.

19.     Registration of the mark DOCTOR DENTAL MD on the Supplemental Register constituted an admission that the mark was (at least at that time) merely descriptive and lacking inherent or acquired distinctiveness.

**COMPLAINT**                                                                                                            Page 4 of 22

20.     On or about December 16, 2010, DiMaria, in her own name, filed another application with the USPTO (Serial Number 85/199,236) for the standard character mark DR DENTAL.  The application claimed a *bona fide* intent to use the mark on or in connection with the following services in Class 44: "Dentist services; providing a website featuring information for dentists on the subject of treatments and procedures related to dentistry; providing a website featuring information for patients in the field of dental health."  A Statement of Use was subsequently filed alleging use of the mark in Commerce since February 28, 2004, and registration on the Principal Register (subject to a disclaimer of DENTAL) was issued on November 27, 2012 (Reg. No. 4,250,602) (the "'602 Registration").  This '602 Registration was also assigned by DiMaria to IADMD in the same *nunc-pro-tunc* assignment dated July 17, 2015.

21.     On or about August 6, 2015, IADMD filed a use-based application with the USPTO (Serial Number 86/716,488) for the standard character mark DR DENTAL claiming use of the mark in Commerce since February 28, 2004 in connection with an array of dental and charitable services in Classes 35 and 44.  After minor amendments to the services description, this application matured into Principal Register registration number 4,886,016 (the "'016 Registration") on January 12, 2016.

22.     Also on or about August 6, 2015, IADMD filed a use-based application with the USPTO (Serial Number 86/716,516) for the standard character mark DOCTOR DENTAL, claiming use of the mark in Commerce since February 28, 2004 in connection with an array of dental and charitable services in Classed 35 and 44.  This application matured into Principal Registration number 4,962,993 (the "'993 Registration") on May 24, 2016.

23.     DiMaria and/or IADMD submitted specimens to the USPTO in connection with the prosecution and maintenance of the '332 Registration, the '602 Registration, the '016

---

**COMPLAINT**                                                                                   *Page 5 of 22*

Registration, and the '993 Registration (collectively the "IADMD Registrations"). However, these specimens all raise doubts on their face about (a) whether the mark was actually in use at the time the application was filed, (b) whether the mark was being used by the entity or individual named on the application, and (c) who the owner of the mark is.

24. Because of the significant doubt raised by these specimens, Faigel filed a consolidated Petition to Cancel the IADMD Registrations with the Trademark Trial and Appeal Board on November 27, 2017. That proceeding, No. 92067397, is currently pending.

### a) THE '993 REGISTRATION SPECIMENS

25. As a prerequisite to obtaining registration of a trademark in the United States, a domestic applicant much submit proof (known as a "specimen") that the mark is actually in use at that time in interstate commerce by the Applicant (or a related entity). Current specimens showing continued use must also be submitted to the USPTO in order to maintain or renew a registration.

26. The specimens submitted in 2015 in support of application serial no. 86/716,516 for the mark DOCTOR DENTAL, which are required to show *current* use of the mark by the applicant, consist of printouts of advertising materials reflecting use of the mark by a different party entirely, John J. Ryan, DMD of East Hampstead, New Hampshire. Each of the items is dated *2004* (and thus is not evidence of use in 2015), all feature markedly inconsistent branding, and one of them clearly states that the mark is the "property of Dr. John J. Ryan, DMD." Partial images of these specimens are shown below.

---









27.     Thus all the specimens in support of the '993 Registration bear indicia of fabrication and call into question both IADMD's ownership of this mark and whether this mark is, or has ever actually been, in *bona fide* use in Commerce.

**b)  THE '106 REGISTRATION SPECIMENS**

28.     The specimens submitted in 2015 in support of Application Serial No. 86/716,488 for the mark DR DENTAL, which are required to show *current* use of the mark by the applicant, consist of printouts of advertising materials reflecting use of the mark by a

---

**COMPLAINT**                                                    Page 8 of 22

different party entirely, John J. Ryan, DMD of East Hampstead, New Hampshire. Each of the items is dated *2004* (and thus is not evidence of use in 2015), and all feature markedly inconsistent branding. Partial images of these specimens are shown below.





Dr Dental™ is an independent not-for-profit charitable organization founded by Dr. John J. Ryan, DMD where patients never turned away at 39 Webber Rd., East Hampstead, NH for not having the ability to pay.





29.     Thus all the specimens in support of the '106 Registration bear indicia of fabrication and call into question both IADMD's ownership of this mark and whether this mark is, or has ever actually been in *bona fide* use in Commerce.

**c)   THE '602 REGISTRATION SPECIMENS**

30.     The specimen submitted in 2012 in support of the Statement of Use for Application Serial No. 85/199,236 (which matured to the '602 Registration) consists a one-page advertisement from *2004* identical to one of the specimens submitted in 2015 for application serial no. 86/716,488. The specimen consists of an invitation to a talk purportedly given in September 2004, and shows no contemporary use of the mark in connection with the Class 44 services claimed in the application:



31.     Thus all the specimens in support of the '602 Registration bear indicia of fabrication and call into question both IADMD's ownership of this mark and whether this mark is, or has ever actually been in *bona fide* use in Commerce, whether for the claimed services or anything else.

### d)  THE '322 REGISTRATION SPECIMENS

32.     The specimen submitted in 2017 in support of the renewal of the '322 Registration for the mark DOCTOR DENTAL MD, which is supposed to show *current* use of the mark, consists of four pages of advertising materials bearing dates of *2003*, feature markedly inconsistent branding, display a phone number different from the other specimens, and on one page mention IADMD Holdings, an entity that was not organized in New Hampshire until *2005*. Images of these specimens are shown below.





Doctor Dental MD®
is a General Dentistry
Patient Outreach Program
Call (617) 455-5529
for Information



## Doctor Dental MD®
## Community Outreach



### Do No Harm
to your Health..."

"...People with gum disease are
almost twice as likely to suffer from
coronary artery disease ..."

"Doctor Dental MD has
helped me to feel healthier
and confident again. Thank
you for helping me when
times were tough and at a
time when every dentist I
called would not see me
without their required money
up front. Thanks again." —
Jacqueline C.

### Our Focus is on Oral Health
Doctor Dental MD® helps you achieve general
dental care for your overall health so that life
can go back to days of feeling better.



**Doctor Dental MD®**
**General Dentistry**
**Patient Outreach**

Doctor Dental® MD is an outreach
dental and oral health program.

Please contact us if you are a
patient in need of care or
know of someone in need of care
that does not have dental offices'
required funds to see a
general dentist.

### Contact Us
Doctor Dental MD®
617.455.5529



Dental practices licensed to
carry the Doctor Dental MD®
trademark are small
independently owned private
practices across the United States;
*not chains, clinics or franchises.*



Reserved.Owned Trademarks IADMD Holdings



33.     Thus all the specimens in support of the '322 Registration bear indicia of

fabrication and call into question both IADMD's ownership of this mark and whether this mark is,

or has ever actually been in *bona fide* use in Commerce.

---

### C.  IADMD'S VEXATIOUS DEMANDS

34.     On August 28, 2017, Faigel received several cease and desist letters sent on behalf of IADMD.  The letters were sent to multiple Faigel offices on the same day in a coordinated campaign.  A true and correct copy of one of these letters is attached hereto as **Exhibit A**.

35.     Each of these letters referenced the IADMD Registrations and demanded the immediate cessation of Faigel's use of the DR. DENTAL Mark in association with the provision of dental services, including without limitation on any website, signage, advertising, and promotional materials relating to the services Faigel provides.

36.     These letters further threaten legal action and insinuated that Faigel's use of the DR. DENTAL Mark had serious, far –reaching, and potentially expensive ramifications.

37.     These letters also demanded a written confirmation that Faigel would immediately cease and not recommence the "unauthorized" use of any of IADMD's purported trademarks or marks that may be confusingly similar to such marks.

38.     These letters further demanded an accounting of all sales associated with Faigel's use of the DR. DENTAL Mark since 2010, as well as a list of all current, former, and potential customers of Faigel.

### COUNT I: DECLARATORY JUDGMENT
**(Non-Infringement of Trademarks)**

39.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 38 above as if fully set forth herein.

40.     As an actual justiciable controversy exists by way of IADMD's threatened legal action and demand that Faigel immediately cease use of the DR. DENTAL Mark, Plaintiff seeks relief from this Court.

41.     As set forth above, IADMD does not hold enforceable trademark rights in any of the marks shown in the IADMD registrations.

42.     Plaintiff is entitled declaratory judgment that it is not infringing, has not infringed, and is not liable for infringing any allegedly enforceable rights owned by IADMD by its use of the mark DR. DENTAL in connection with is dentistry business.

**COUNT II: DECLARATORY JUDGMENT**
**(Trademarks Subject to Cancellation)**

43.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 42 above as if fully set forth herein.

44.     As set forth in Counts III-VI, each of the IADMD Registrations is subject to cancellation.  Plaintiff respectfully requests a declaration from this Court that:

    a.  The IADMD Registrations are void *ab initio* based on a lack of *bona fide* use in Commerce and are subject to cancellation pursuant to 15 U.S.C. § 1064.

    b.  The IADMD Registrations have been abandoned as a result of naked licensing and are subject to cancellation pursuant to 15 U.S.C. § 1064(3).

    c.  The IADMD Registrations are void *ab initio*, pursuant to 37 C.F.R. § 2.71(d), based on the fact that the respective marks were not owned by IADMD or DiMaria at the time the applications were filed and are subject to cancellation pursuant to 15 U.S.C. § 1064.

    d.  The marks associated with the '993, '106, and '602 Registrations are merely descriptive of the services in the classes claims in those registrations, have not acquired distinctiveness, and are subject to cancellation pursuant to 15 U.S.C. § 1064.

---

**COMPLAINT**

e.  The '602 and '322 Registrations are not currently in *bona fide* use by IADMD and

such non-use has persistent for a period exceeding three (3) years, and are subject

to cancellation pursuant to 15 U.S.C. § 1064(3).

## COUNT III: CANCELLATION OF THE IADMD REGISTRATIONS
### (No *Bona Fide* Use)

45.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through

44 above as if fully set forth herein.

46.     As discussed above, all of the specimens submitted in connection with the

application and maintenance of the IADMD Registrations bear indica of fabrication and call into

question both IADMD's ownership of the marks and whether the marks are, or have ever

actually been in *bona fide* used in Commerce.

47.     On information and belief, at the time that IADMD filed the application for the

'993 Registration, the mark DOCTOR DENTAL was not in fact in *bona fide* use in Commerce

for the claimed services.  The '993 Registration is therefore void *ab initio* and should be

cancelled pursuant to Section 14 of the Trademark Act (15 U.S.C. § 1064).

48.     On information and belief, at the time that IADMD filed the application for the

'106 Registration, the mark DR DENTAL was not in fact in *bona fide* use in Commerce for the

claimed services.  The '106 Registration is therefore void *ab initio* and should be cancelled

pursuant to Section 14 of the Trademark Act (15 U.S.C. § 1064).

49.     On information and belief, at the time that DiMaria signed and filed the Statement

of Use in connection with the application for the '602 Registration, the mark DR DENTAL was

not in fact in use in Commerce for the claimed services.  The '602 Registration is therefore void

*ab initio* and should be cancelled pursuant to Section 14 of the Trademark Act (15 U.S.C. §

1064).

50.     On information and belief, at the time that DiMaria signed and filed the Amended to Allege Use in connection with the application for the '322 Registration, the mark DOCTOR DENTAL MD was not in fact in use in Commerce for the claimed services.  The '322 Registration is therefore void *ab initio* and should be cancelled pursuant to Section 24 of the Trademark Act (15 U.S.C. § 1092).

51.     In the alternative, at the time that IADMD filed the Section 8 & 9 renewal declaration for the '322 Registration the mark DOCTOR DENTAL MD was not in fact in use in Commerce for the claimed services.  The '322 Registration therefore should be cancelled pursuant to Section 24 of the Trademark Act (15 U.S.C. § 1092).

### COUNT IV: CANCELLATION OF THE IADMD REGISTRATIONS
**(Abandonment)**

52.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 51 above as if fully set forth herein.

53.     In the alternative, even if the DR DENTAL mark ('602 Registration) was ever in use by IADMD, on information and belief the mark is not currently in *bona fide* use by IADMD or by any related company of IADMD, and such non-use has persisted for a period exceeding three (3) years.

54.     Additionally, even if the DOCTOR DENTAL MD mark ('322 Registration) was ever in use by IADMD, on information and belief the mark is not currently in *bona fide* use by IADMD or by any related company of IADMD, and such non-use has persisted for a period exceeding three (3) years.

55.     Failure to make use of a mark in Commerce for more than three (3) years creates a rebuttable presumption of an intent not to resume use.  As a result, the IADMD Registrations

---

**COMPLAINT**

should be cancelled on grounds of abandonment pursuant to Section 14(3) of the Trademark Act (15 U.S.C. § 1064(3)).

**COUNT V: CANCELLATION OF THE IADMD REGISTRATIONS**
**(Lack of Ownership)**

56.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 55 above as if fully set forth herein.

57.     On information and belief, at the time that Application Serial Nos. 86/716,516 and 86/716,488 were filed by IADMD, IADMD was not in fact the owner of these marks.  As a result, the '993 Registration and the '106 Registration are void *ab initio* pursuant to 37 C.F.R. § 2.71(d) and should be cancelled pursuant to Section 14 of the Trademark Act (15 U.S.C. § 1064).

58.     On information and belief, at the time that Application Serial No. 85/199,236 was filed by DiMaria, DiMaria was not in fact the owner of the mark.  Further, on information and belief, at the time that the Statement of Use in support of this application was filed by DiMaria, DiMaria was not in fact the owner of the mark.  As a result, the '602 Registration is void *ab initio* pursuant to 37 C.F.R. § 2.71(d) and should be cancelled pursuant to Section 14 of the Trademark Act (15 U.S.C. § 1064).

59.     On information and belief, at the time that Application Serial No. 78/612,948 was filed by DiMaria, DiMaria was not in fact the owner of the mark.  Further, on information and belief, at the time that the Amendment to Allege Use in support of Application Serial No. 78/612,948 was filed by DiMaria, DiMaria was not in fact the owner of the mark.  As a result, the '322 Registration is void *ab initio* pursuant to 37 C.F.R. § 2.71(d) and should be cancelled pursuant to Section 24 of the Trademark Act (15 U.S.C. § 1092).

## COUNT VI: CANCELLATION OF THE '993, '106, and '602 REGISTRATIONS
### (Descriptiveness)

60.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 59 above as if fully set forth herein.

61.     In the alternative, the marks DOCTOR DENTAL ('993 Registration) and DR DENTAL ('106 Registration) are merely descriptive of all of the services in classes 35 and 44 claimed in these registrations, including "the procurement and distribution of dental health services from dentists to needy people" and "dentist services", and the marks have not acquired distinctiveness.  The '993 Registration and the '106 Registration, which include no disclaimer or Section 2(f) claim, are therefore subject to cancellation pursuant to Section 14 of the Trademark Act (15 U.S.C. § 1064).

62.     Additionally, the mark DR DENTAL ('602 Registration) is merely descriptive of all the services in class 44 claimed in the registration, including by way of illustration "dentist services", and the mark has not acquired distinctiveness.  The '602 Registration, which includes a disclaimer of DENTAL and no Section 2(f) claim, is therefore subject to cancellation pursuant to Section 14 of the Trademark Act (15 U.S.C. § 1064).

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A.  That this Court enter an Order declaring that Faigel's use of the DR. DENTAL mark does not infringe, and has not infringed, any valid, distinctive and enforceable trademark rights owned by IADMD.

B.  That this Court enter an Order pursuant to 15 U.S.C. § 1119 directing the cancellation of the '993 Registration;

---

C.  That this Court enter an Order pursuant to 15 U.S.C. § 1119 directing the cancellation of the '106 Registration;

D.  That this Court enter an Order pursuant to 15 U.S.C. § 1119 directing the cancellation of the '602 Registration;

E.  That this Court enter an Order pursuant to 15 U.S.C. § 1119 directing the cancellation of the '322 Registration;

F.  That this Court enter an Order awarding attorneys' fees, costs, and expenses incurred in connection with this action to Faigel; and

G.  That this Court aware Faigel such other and further relief that this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38 and Local Rule 38.1, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Date: August 31, 2018                    /s/Brian M. Gaff

Brian M. Gaff (NH Bar No. 17106)
R. David Hosp*
Robert M. O'Connell*
Laura B. Najemy*
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA  02210-1878
(617) 542-5070
(617) 542-8906 (fax)
gaff@fr.com
hosp@fr.com
oconnell@fr.com
najemy@fr.com

*Attorneys for Julia O. Faigel DMD, P.C.*
*Motion for *pro hac vice* admission to be filed